Virginia P. HAINES, SSN 508–26–4360, Plaintiff,

v.

Otis R. BOWEN, Secretary, Department of Health and Human Services, Defendant.

No. CV87–L–20.

United States District Court, D. Nebraska.

June 23, 1987.

the decision of the administrative law judge is the final decision of the Secretary and is reviewable by this court.

Since no challenge to the granting of the SSI benefits is made, the controversy centers on the denial of the disability benefits prior to June 30, 1984. Accordingly, the review of this case is limited to the issues and evidence relevant to the denial of the disability benefits.

### I.

The decision of the administrative law judge must be affirmed if it is supported by substantial evidence in the record as a whole. *McMillian v. Schweiker,* 697 F.2d 215, 220 (8th Cir.1983). Substantial evidence is that amount of relevant evidence a reasonable mind might accept as adequate to support a conclusion after considering whatever fairly detracts from the evidence. *Bogard v. Heckler,* 763 F.2d 361, 363 (8th Cir.1985).

### II.

At the time of the hearing the plaintiff was a fifty-five-year-old woman with an eleventh grade education. The plaintiff has performed no substantial gainful work activity since August, 1979. The plaintiff's past work experience includes positions as a relief manager for a convenience store, records clerk for a welding supply company, room clerk and cashier for a motel, cashier for a restaurant, cashier for a trailer park, and dispatcher for an emergency road service.

The administrative law judge found that the plaintiff suffered from the following ailments: degenerative arthrosis of the cervical spine, degenerative arthritis of the knees, and hypertension. Additionally, the administrative law judge indicated that the plaintiff had experienced the following short-lived ailments: dislocated right thumb, sprained ankle, ganglion of the right wrist, viral infection, and gum infection. The administrative law judge determined that the plaintiff was capable of performing her former "light" and "sedentary" occupations. Consequently, the ad-

Mary Stoughton Wenzl, Lincoln, Neb., for plaintiff.

Daniel A. Morris, Asst. U.S. Atty., Omaha, Neb., for defendant.

### MEMORANDUM

URBOM, District Judge.

On June 13, 1986, the administrative law judge granted the plaintiff's application for supplemental security income (SSI) benefits effective October 30, 1985, but denied the plaintiff's application for disability benefits prior to June 30, 1984. The Appeals Council declined to review the decision. Thus,

ministrative law judge found the plaintiff not disabled.

### III.

The plaintiff testified that her condition gradually deteriorated from 1980 until July 4, 1984, the date the plaintiff experienced her first heart attack. The plaintiff testified that from 1979 until 1982 she was able to do housework, but she experienced shortness of breath. The plaintiff stated that it took her about two days to complete housework that should have taken no more than three hours. During that time, the plaintiff was able to go dancing with her husband and attend church. At that time, the plaintiff could sit approximately two hours. The plaintiff stated that she was unable to do any lifting by 1980 or late 1981. However, the plaintiff also indicated that she could occasionally lift pots, pans, and a carton of milk. Additionally, the plaintiff testified that since 1979 she has been unable to walk more than a block.

The plaintiff also testified that during 1979 to 1983 she did not experience heart trouble. Her ailments were shortness of breath, arthritis in her back and knees, and high blood pressure. The plaintiff also indicated that her ailments did not affect her ability to use her elbows, wrists, and fingers.

The plaintiff stated that she "couldn't do much of anything" by 1982. After 1982, the plaintiff was unable to vacuum the floors because of shortness of breath. The plaintiff infrequently washed the dishes because standing on her feet aggravated the arthritis in her feet and back. Additionally, the plaintiff stated that she experienced "a lot of difficulty" when shopping. Also, during this time the plaintiff laid down about six hours a day and was able to sit for about an hour a day. The plaintiff stated that she was able to walk about an hour throughout the day. Moreover, during this time her daughter or her husband did the housework.

The transcript indicates that:

"Q. Okay. Okay. Now you moved to Nebraska in December of '83. Now from December of '83 to when you had your heart attack in July of '84, now what doctors did you have here in Lincoln, if any?

A. I went to see Dr. Krause to re——get my—Richard Krause, that is my mother's doctor, for a re-prescription on my pressure medicine.

Q. Okay. For—for the prescription on the blood pressure medication?

A. Yes, sir.

Q. Did he ever see you and examine you or anything? Dr. Krause?

A. Briefly.

Q. And is he a family doctor? Family practitioner?

A. Yes, sir. I think. Or an internist, I don't know, sir, really. I want to—

Q. You saw him very briefly and he took your blood pressure and prescribed the medication?

A. Yes, sir.

Q. Now is that the extent of your medical care from December of '83 to July of '84?

A. Yes, sir."

The plaintiff's husband, Eldon Haines, testified that from 1982 until 1984, he and his wife were able to go for short drives in the country. Haines testified that during this time his wife did very little housework and by 1980 his daughter primarily did the housework. Since 1982, Haines indicated that he "took over" the housework and did "about 99% of the cooking".

### IV.

The vocational expert, Burton Hultine, testified that the plaintiff's past work experience ranged from heavy to sedentary. Before posing hypothetical questions to the vocational expert, the administrative law judge summarized the medical evidence of record. The administrative law judge noted that from 1979 to 1984 the plaintiff experienced elevated blood pressure, arthritis, a sprained ankle, strep throat, congestion, respiratory problems, diverticulosis, ganglion, dental problems, an inability to grip items in her hands, and her legs "giving out". The plaintiff also sustained injuries in a car accident and was hospitalized for fatigue. The administrative law judge also indicated that the plaintiff took the following medications: Feldene, Inderal, di-

uretic and other blood pressure prescriptions.

The administrative law judge then asked the vocational expert to assume that the plaintiff suffered from the impairments described in the medical record and that the plaintiff's testimony regarding her subjective complaints was credible. Accordingly, when asked whether the plaintiff could perform her past relevant work, the vocational expert testified that the plaintiff was incapable of performing her previous work.

The administrative law judge next asked the vocational expert to assume the plaintiff suffered from the impairments and restrictions set forth in the medical evidence of record, but assume the plaintiff's and her husband's testimony incredible. The administrative law judge asked the vocational expert if he had an opinion as to whether the plaintiff could return to her past relevant work.

The vocational expert initially responded: "My opinion would be that she would not have been able to perform her previous work or any other work that I am aware of, during a continuous period from '79 to '84."

In response to the administrative law judge's inquiries regarding the rationale for such a conclusion, the vocational expert asked for additional time to review the file. The vocational expert then stated: "Well, Your Honor, I would have to—I would have to reverse my earlier opinion and—and agree that there is a sparsity of evidence prior to 6/30/84 that would— that would a—preclude the claimant from working in her previous occupations, particularly those that would be classified as light and sedentary.

To be sure—my opinion, that I expressed previously was largely based upon the evidence post July 4, 1984."

The administrative law judge then inquired: "I guess my question to you, Doctor, is from your study of the medical evidence, have you seen, and I asked the lady during the hearing, what were her conditions, and (INAUDIBLE) of a heart problem before that time and she mentioned just her elevated blood pressure readings and occasional chest pains and some shortness of breath. Do you, in the medical evidence, and I don't want you to be a doctor again, see anything that would indicate in the medical evidence after the heart attack that would give any light on what her condition was clinically prior to that time, other than what I've stated here?"

The vocational expert responded: "No, sir. I—really can't say that I do. I—I'm—was simply caught up in the—in the times, proximity of times between the—between the claimant's description of her problems and those that actually began to occur then in July of '84."

The administrative law judge further inquired: "[W]ell basically then, in answer to the question that I have given to you now, considering the—the medical evidence, all of it, but with emphasis on that part of the medical evidence which reflects her condition between August of '79 and June 30th, of 1984, but giving consideration to the medical evidence after that, insofar as it may reflect and show her condition prior to that time, then it—it is your opinion now, and discounting the testimony and giving due consideration to age, education and work experience and skills—transferable skills that would be transferable in spite of the medical evidence, it's your opinion now that she could return to the light and sedentary work she did as a dispatcher and cashier and so forth, is that—is that right?

The vocational expert responded: "Yes, sir. I believe so."

The administrative law judge then inquired: "And I suppose there would be thousands of related jobs in this area that she could do, general clerical, secretary-clerical work and that type of thing, would there not?"

The vocational expert answered: "Yes, sir, there would be."

### V.

The plaintiff contends that the administrative law judge erroneously discredited the plaintiff's subjective complaints of pain

because "the inconsistencies stated by the Administrative Law Judge are not so inconsistent with the claimant's testimony as to discredit said testimony". The plaintiff essentially argues that the record does not support a finding that the plaintiff was not disabled after 1982.

■ The Eighth Circuit Court of Appeals set forth the standards for evaluating subjective complaints of pain in *Polaski v. Heckler*, 751 F.2d 943 (1984), *vacated on other grounds*, — U.S. —, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986). The administrative law judge may not disregard subjective complaints of pain solely because the objective medical evidence does not fully support the claim. The absence of objective medical evidence is one factor to be considered with all of the evidence relevant to the plaintiff's subjective complaints, including the plaintiff's past work record and observations by third parties and physicians, which bear on (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id.* at 948.

After recounting the plaintiff's testimony and the medical evidence of record, the administrative law judge resolved the issue of the plaintiff's credibility by determining that inconsistencies in the evidence as a whole existed. The administrative law judge determined that:

"Based upon various inconsistencies between the Claimant's testimony and the pertinent clinical and laboratory findings of record (e.g. Mrs. Haines stated that, prior to June 30, 1984, she experienced episodic shortness of breath and occasional chest pain; however, when hospitalized in January 1981, she specifically denied chest pain or palpitations; the progress notes completed by Dr. Pool of Medina, Ohio from April 1981 to April 1983 contain no mention of chest pain; and, when hospitalized due to a heart attack on July 16, 1984, the Claimant, once again, specifically denied any pre-infarction history of exertional chest pain, orthopnea, chronic cough, wheezing, asthma, etc.); the recorded observations of third parties during the period in question (including the progress notes of Dr. Pool who, on several occasions, recorded that the Claimant was 'feeling good' or 'doing well'); the lack of any evidence suggesting ongoing or regular medical treatment from any significant impairments prior to June 30, 1984; and, the apparent effectiveness of her medical management at that time (e.g. according to Dr. Pool her hypertension was well-controlled with medications); it is found that, on or before June 30, 1984, the Claimant did not experience the above symptomatology (i.e. fairly continuous low back and knee pain, episodic shortness of breath and chest pain) in such intensity, or of such frequency or duration, as would have precluded the performance of her former 'light' and 'sedentary' work as a dispatcher and cashier."

I also note that Dr. Charles Wilson, a specialist in cardiovascular disease, indicated on about July 17, 1984, that:

"The patient has no history of exertional chest pain. She denies orthopnea or paroxysmal nocturnal dyspnea but she has had some exertional dyspnea over the past four or five years even with mild activity such as doing her housework or walking one block. Actually her walking is limited to one block because of arthritis rather than dyspnea ... She denies chronic cough, wheezing, asthma, hemoptysis, syncope, claudication or palpitation." (Tr. 181).

■ In disability determinations, credibility assessments are in the first instance for the administrative law judge. The reviewing court will not interpose its own judgment. Where proof of a disability depends upon a credibility determination, the administrative law judge may reject the plaintiff's testimony by expressly discrediting the subjective complaints and documenting some basis for the finding. *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984). The existence of inconsistent evidence in the record is one basis for explicitly discrediting subjective allegations of pain.

■ The administrative law judge thoroughly evaluated the evidence of record, including the plaintiff's subjective com-

plaints. The administrative law judge found the plaintiff's testimony regarding such complaints incredible. I am not persuaded that the finding of the administrative law judge is not supported by substantial evidence in the record as a whole. Accordingly, the decision of the Secretary is affirmed.